UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAOOF FOUAD DARWISH MEHESIEN
HAGAG,

        *Plaintiff*,

   v.

MATTHEW PALMER, *et al.*,

        *Defendants*.

Civil Action No. 25-01735 (AHA)

**Memorandum Opinion**

Raoof Fouad Darwish Mehesien Hagag sues to compel the government to make a final decision on his and his family's nonimmigrant visa applications. The government moves to dismiss the complaint for failure to state a claim. The court agrees Hagag has failed to state a claim and grants the motion.

**I.**    **Background[1]**

The J-1 visa program allows people with residence in a foreign country to temporarily come to the United States to participate in designated programs "for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training." 8 U.S.C. § 1101(a)(15)(J). Foreigners apply for a visa through their local consulate and then interview in person with a consular officer. 22 C.F.R. §§ 41.101(a), 41.102, 41.103(a). After the interview, "the consular officer must issue the visa [or] refuse the

---

[1] As required at the pleading stage, the court accepts the complaint's well-pled factual allegations and draws all reasonable inferences in Hagag's favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

visa." *Id.* § 41.121(a). If the consular officer concludes additional information could help establish the applicant's eligibility, the officer can "refuse" the visa and refer the application for further administrative processing. *Administrative Processing Information*, U.S. Dep't of State, https://perma.cc/K24G-585C (last visited Feb. 25, 2026).

Hagag was working as a medical fellow in the U.K. and matched with a residency program at a hospital in the U.S. ECF No. 1 ¶ 5. In April 2024, he applied for a J-1 visa and included his wife and children as derivative applicants so they could all come to the U.S. during his residency program. *Id.* ¶¶ 2, 5, 17. In May 2024, the family interviewed at a U.S. embassy in the U.K. and, at the end of the interview, they were told their applications were being referred for administrative processing. *Id.* ¶¶ 19–20. Over the next months, Hagag reached out to the embassy periodically for updates on the applications, and each time he was told that the status remained the same. *Id.* ¶¶ 25–27. Hagag and his family's preparations to move to the U.S. have been frustrated by the delay in processing their visa applications. *Id.* ¶¶ 5–6.

Hagag brings this action under the Administrative Procedure Act ("APA") and Mandamus Act to compel the government to act on his family's visa applications. *See* 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"); 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). The government moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6).

## II.   Discussion

To survive dismissal for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The court "must take all the factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. The Complaint Does Not State An Unreasonable Delay Claim

In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). In *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), the D.C. Circuit identified six non-exclusive factors that guide the unreasonable delay analysis:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> 
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted); *see Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (recognizing that the *TRAC* factors are not exhaustive). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance

3

in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). Here, the factors favor dismissal.[2]

The first factor is the "most important consideration" and the second factor "gives content to the first." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024) (cleaned up). They evaluate "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Here, both factors favor the government. The agency's response time is not subject to any specified schedule. At most, Congress has expressed its "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). That "language is insufficient to set a deadline," serving only as an "aspirational statement" and "a ruler against which the agency's progress must be measured." *Da Costa*, 80 F.4th at 344 (cleaned up). The non-binding congressional aspiration "somewhat favors" Hagag because he has been waiting more than 180 days. *Id*. But in the absence of a specific deadline, "courts typically turn to case law as a guide" to assess the reasonableness of a visa delay. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Courts have recognized "[t]here is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). However, they "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020

---

[2] Hagag argues that "analysis of the *TRAC* factors at this stage of litigation is inappropriate given the incompleteness of the record." ECF No. 7 at 21. However, the D.C. Circuit has affirmed dismissals of visa delay cases for failure to state a claim based on the *TRAC* factors. *See Da Costa*, 80 F.4th at 340–46; *Mukkavilli v. Jaddou*, No. 23-cv-5138, 2024 WL 1231346, at *2 (D.C. Cir. Mar. 22, 2024) (per curiam).

4

WL 3082018, at *6 (citation omitted) (collecting cases). Here, Hagag and his family's visa applications were in administrative processing for just over one year when he brought this action and, even accounting for the time since, the delay is still within the range that courts have found consistent with a rule of reason. It has not reached the "level of disproportionality" necessary to tip these two factors in his favor. *Da Costa*, 80 F.4th at 344.[3]

The third and fifth *TRAC* factors address the interests affected by agency delay, including whether human health and welfare are at risk. *TRAC*, 750 F.2d at 80. These factors favor Hagag. The complaint alleges significant harm to his and his family's personal and professional lives because of the delay. Hagag has already had to delay the start date of his residency by a year, and he may be at risk of losing the job altogether, after devoting substantial time and money to applying for the position and making plans to leave his current job. ECF No. 1 ¶ 5. Hagag's wife stopped searching for jobs in the U.K. to prepare for the move to the United States, and his children were already set to leave their schools. *Id.* ¶ 6. The delay has accordingly frustrated important interests. That said, Hagag does not allege the type of severe health or welfare threats that could offset the other factors. *See Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *6 (D.D.C. Aug.

---

[3] This court agrees with the other courts in this district that the reasonableness of delay cannot be determined solely "by reference to some number of months or years beyond which agency inaction is presumed to be unlawful" and can depend on facts such as "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Jingjing Liu v. Mayorkas*, No. 20-cv-654, 2021 WL 2115209, at *5 (D.D.C. May 25, 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Courts have accordingly concluded that plaintiffs plausibly alleged the government's failure to follow a rule of reason when they alleged an agency "arbitrarily and intentionally increased [application] processing times," *Jingjing Liu*, 2021 WL 2115209, at *3, or had "no processing queue," *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 13 (D.D.C. 2024). Here, although Hagag alleges lack of transparency, he does not allege the absence of a rule of reason. *See* ECF No. 1 ¶¶ 25, 28, 31 (alleging it is unclear what administrative processing is being done and the agency has given "no meaningful status updates" except that "administrative processing remains underway" and "cannot be waived or expedited").

2, 2024) (concluding that allegations of "severe emotional distress" and significant "visa-related expenses" did not "threaten Plaintiffs' physical health and wellbeing in a manner compelling enough to overcome" the other factors).

The fourth *TRAC* factor favors the government. This factor asks if "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The D.C. Circuit has noted the importance of this factor. *See Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (observing that the circuit has "refused to grant relief" based on factor four, "even though all the other factors considered in *TRAC* favored it"). In the visa context, compelling agency action is disfavored when relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in overall efficiency. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Here, accepting Hagag's allegations, the most natural inference is that prioritizing his application would simply reorder applicants, prioritizing him over others who have been waiting. Compelling the government to complete its processing of Hagag's application would therefore simply advantage him over other applicants; there is no allegation that it would reduce delays more broadly. Because the relief sought entails bumping others who are ahead in the queue, factor four favors the government.

The sixth factor asks whether the agency's delay involves any bad faith. *TRAC*, 750 F.2d at 80. There is no such allegation here and accordingly the factor is "neutral." *Afghan & Iraqi Allies*, 103 F.4th at 820 (citation omitted); *see* ECF No. 7 at 27 (explicitly disclaiming any allegations of "impropriety by Defendants," and stating that the sixth factor is neutral).

Considered together, the *TRAC* factors counsel in favor of dismissal here. There is no denying the "troubling backlog" of visa applications and the way it disrupts the lives of so many

6

people. *Da Costa*, 80 F.4th at 344. But under binding precedent, the court must conclude that Hagag has not stated a claim that entitles him to relief.[4]

### III.   Conclusion

For these reasons, the motion to dismiss is granted and this action is dismissed without prejudice.

A separate order accompanies this memorandum opinion.

_____
AMIR H. ALI
United States District Judge

Date:   March 3, 2026

---

[4]   The government also moves to dismiss for lack of jurisdiction based on the doctrine of consular nonreviewability and the nondiscretionary duty requirement for unreasonable delay cases. *See* ECF No. 6 at 4–11. But "the doctrine of consular nonreviewability is non-jurisdictional." *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1027–29 (D.C. Cir. 2021). And this court follows the approach of others in this district, which have not treated the nondiscretionary duty requirement as jurisdictional. *See, e.g.*, *Baygan v. Blinken*, No. 23-cv-2840, 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (assuming without deciding the existence of a nondiscretionary duty and proceeding to analyze the merits of plaintiff's claims). The court accordingly need not consider these issues because it dismisses Hagag's claim on other grounds. *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 n.5 (explaining that courts may proceed to the merits instead of addressing these two threshold issues).